Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 605 | **DATE** | 2/3/2003 |
| **CASE TITLE** | Diab vs. Illinois Depart. of Human Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion For Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Defendant's motion for summary judgment [51-1]. Defendant's motion is granted. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | 63 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | FEB 0 5 2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NASSER DIAB, )
      Plaintiff, )
) No. 98 C 605
v. )
) HONORABLE CHARLES R. NORGLE
)
ILLINOIS DEPARTMENT OF )
HUMAN SERVICES, )
      Defendant. )

**DOCKETED**
**FEB 0 5 2003**

## OPINION AND ORDER

**Charles R. Norgle Sr., District Judge**

Before the court is Defendant's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

### I. BACKGROUND [1]

This case arises out of several incidents and alleged statements that occurred while Plaintiff, Nasser Diab ("Diab"), was working for Defendant, Illinois Department of Human Services ("IDHS"), at the John J. Madden Health Center. Diab, a registered nurse, is of Lebanese descent and was born in Germany. Diab filed his complaint on January 30, 1997, alleging that he was discriminated against based on his national origin in violation of 42 U.S.C. § 2000e et seq., ("Title VII"), and 42 U.S.C. § 1981.

Diab began working for IDHS on September 13, 1994. In December 1996, Diab, requested to be placed on a day shift. The day shift ran from 8:00 a.m. to 4:00 p.m. Diab's request was granted. In January 1997, Diab requested to be placed on a "flex-time" schedule allowing him to

---

[1] The court takes the facts from the parties' Local Rule 56.1 statements and the accompanying exhibits. Disputed facts are noted in the text.



arrive to work at 9:00 a.m. and leave at 5:00 p.m., so that he would be able to take his daughter to school. Diab's request was denied.

Shortly after Diab's request to be placed on "flex-time" was denied, he frequently arrived late to work or called in sick to work. Diab was tardy for work on 1/22/97, 1/27/97, 1/28/97, 3/14/97, 3/29/97, 3/20/97, 3/21/97, 3/24/97, 3/25/97, and 3/28/97. Diab called in sick to work on 2/27/97, 2/24/97, and 3/16/97. Diab was counseled by his supervisor, Arlene Maraviles ("Maraviles"), regarding his repeated tardiness and was also placed on a "proof of status," which required him to show proof for any further sick days he claimed.

On April 10, 1997 Maraviles scheduled a pre-disciplinary meeting with Diab for April 15, 1997 at 1:30 p.m. to discuss Diab's excessive tardiness and failure to follow Maraviles' directions regarding his abuse of time. On April 15, 1997 at approximately 1:15 Diab entered Maraviles' office and told her that he would not be attending the meeting. Diab also stated that he had friends who wanted to know who was mistreating him because "they're ready to pour acid to their faces." Maraviles, understandably, took this statement to be a threat and reported it to the Assistant Director of Nursing, Ruth Stevens.

Despite Diab's statements, the pre-disciplinary meeting continued as scheduled. The meeting was attended by Maraviles, Allen Morrison and Mary Ann Cebelinski who appeared on Diab's behalf as union representatives. Diab did not attend the meeting. After the meeting Diab's conduct was reported to several other administrative officials. On May 27, 1997 Diab was suspended for 29 days for abuse of time (tardiness), threatening and intimidating behavior, insubordination, and conduct unbecoming. Diab's suspension was later reduced to 20 days. Diab received full back pay for the time he was suspended.

Prior to being placed on suspension Diab was involved in an incident that lead to the injury of a patient. On May 1, 1997 patient R.C. alleged that two security guards slammed him to the floor for no reason, causing him injury. Armend A Ranucci, an investigator for the IDHS Office of the Inspector General, was assigned to investigate the incident. After interviewing the security guards, patients, and hospital staff that were involved in the altercation, Ranucci reported that Diab threatened, intimidated, and harmed the patient. Furthermore, Ranucci reported that Diab inappropriately caused the patient to be placed in restraints, in violation of IDHS policy.

On July 25, 1997, a preliminary meeting was scheduled to discuss the incident, Diab, Allen Morrison, and Maraviles attended. On August 1, 1997, Diab submitted a written rebuttal to the accusations levied against him. Diab's actions were reviewed by several administrative officials. The administrative officials determined that Diab should be suspended pending his discharge. Diab appealed his discharge to the Illinois Civil Service Commission. Following a hearing it was determined that the charges, involving the patient, could not be proven and that his discharge was therefore unwarranted. Diab was rehired by IDHS and awarded full back pay.

Diab asserts that the denial of "flex-time," the 29 day suspension, and his dismissal were not based on his actions, but his national origin. Diab bases this assertion on several alleged statements made by Maraviles. Diab alleges that on several occasions from 1995-1997 Maraviles stated that he "should go back to Lebanon," and that "you guys born in Germany and [in the] [M]iddle [E]ast are lousy, and I am going to get you one way or another."

IDHS has filed a motion for summary judgment which is fully briefed and ripe for ruling.

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events.") A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

B.  **Gender Discrimination Claims**

Under Title VII, Diab is required to provide evidence supporting his national origin discrimination claims by one of two methods, either directly or indirectly. Lim v. Trs. of Ind. Univ., 297 F.3d. 578, 580 (7th Cir. 2002). The direct method is established by putting in enough evidence (whether direct or circumstantial) to demonstrate that IDHS discriminated against Diab because of his national origin. See, e.g., Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). Direct evidence of discrimination is "smoking gun" evidence, such as "[w]e fired you because of your [national origin]." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (analyzing

4

the McDonnell-Douglas test in an ADA/age discrimination case.) Diab may also use circumstantial evidence to show IDHS's discriminatory intent. The types of circumstantial evidence that Diab can present are: "suspicious timing, ambiguous statements, behavior toward or comments directed at other [people] in the protected group, and other evidence from which an inference of discriminatory intent might be drawn . . . ." Huff, 122 F.3d at 380. Diab has provided no direct or circumstantial evidence regarding IDHS's employment action, only his own self-serving statements as to what was said or done. Therefore, the court looks to the second, indirect method, to analyze Diab's claim.

The second method for proving discrimination is the so-called McDonnell-Douglas, burden shifting, method. The framework for the frequently used burden-shifting method was first set out in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under the McDonnell-Douglas method of proving discrimination, a plaintiff must first establish a prima facie case of discrimination. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998). The Seventh Circuit has consistently held that "the prima facie case under McDonnell Douglas must be established and not merely incanted." See, e.g., Coco v. Elmwood Care, 128 F.3d 1177, 1178 (7th Cir. 1997).

In order to establish a prima facie case Diab must demonstrate that: (1) he is a member of a protected class; (2) he was meeting her employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employee's more favorably. See Cheek v. Peabody Coal Co., 97 F.3d 200, 204 (7th Cir. 1996). If Diab cannot establish a prima facie case, the analysis ends and his claims fail. Plair, 105 F.3d at 347 (citing Randle v. LaSalle Telecommunications, 876 F.2d 563, 569 (7th Cir. 1989)). If a plaintiff is unable to establish a prima facie case of employment discrimination under McDonnell Douglas, an employer should not be subjected to a pretext inquiry. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 327 (7th Cir. 2002); Contreras v. Suncast Corp., 237 F.3d 756, 761 (7th Cir. 2001); Robin, 200 F.3d at 1090; Coco, 128 F.3d at 1179; Plair v. E.J. Brach & Sons, 105 F.3d 343, 347 (7th Cir. 1997).

If Diab succeeds in demonstrating that there is a prima facie case with evidentiary-quality materials, the burden shifts to IDHS to show that it acted without any discriminatory intent when it terminated Diab. Russell v. Board of Trs., 243 F.3d 336, 341 (7th Cir. 2001) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 508 (1993)). The defendant's evidence of a good reason for terminating the plaintiff "must be devoid of circumstances from which it can be inferred that there was a real though subtle purpose of discrimination." Russell, 243 F.3d at 341 If the defendant does so, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason is pre-textual. See id.; see also Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir.1999) (citing McDonnell Douglas, 411 U.S. at 804); Robin, 200 F.3d at 1088.

The focus of the pretext inquiry is whether the defendant's articulated legitimate reason was honest, not whether it was accurate, wise, or well-considered. See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000); see also Tincher v. Wal-Mart Stores, Inc., 198 F.3d 1125, 1129 (7th Cir. 1997) (citing Helland v. South Bend Community Sch. Corp., 93 F.3d 327, 330 (7th Cir. 1996)). In short, pretext means a lie, "and without proof of a lie, no inference of discriminatory motive can be drawn." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001); see also Jackson, 176 F.3d at 983 (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995) ("Pretext in this context means 'a lie, specifically a phony reason for some action.'")). In order to prove pretext Diab's burden is to rebut the articulated reasons for his termination. See Plair, 105 F.3d at 349; see also Diab v. General Scanning, Inc., 876 F.2d 1315, 1319 (7th Cir. 1989). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." Hicks, 509 U.S. 502, 515 (1993). Despite these shifting burdens

of production, the ultimate burden of persuasion always remains with the plaintiff. See Adusumilli, 164 F.3d at 362.

Diab is not able to set forth the four elements needed to show a prima facie case of discrimination based on the evidence presented. There is no question as to the first and third elements needed to establish a prima facie case of national origin discrimination. Diab is a member of a protected class based on his national origin, and he did suffer an adverse employment action when he was suspended and later terminated from his employment, even though he received full compensation for all of the work he missed.

Diab is not able to set forth the second element of the prima facie case, that he was meeting IDHS' legitimate employment expectations. "The 'legitimate expectations' element in the ubiquitous burden-shifting formula of McDonnell Douglas [is crucial]." Coco, 128 F.3d at 1179. If a plaintiff fails to demonstrate that he was meeting his employer's legitimate employment expectations at the time of her termination, the employer should not be "put to the burden of stating the reasons for his termination." Coco, 128 F.3d at 1179; see also Brummett v. Lee Enterprises, Inc., 284 F.3d 742, 745 (7th Cir. 2002); Contreras, 237 F.3d at 761; Espo Eng'g Corp., 200 F.3d at 1090; Biolchini v. Gen. Elec. Co., 167 F.3d 1151, 1154 (7th Cir. 1999); Plair, 105 F.3d at 347.

Generally, the issue of whether an employee was meeting an employer's legitimate employment expectations is not the employee's past performance but "whether the employee was performing well at the time of his termination." Karazanos v. Navistar Intern. Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991); see also Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998). Furthermore, prior job performance "evaluations, standing alone, [do not] create a genuine issue of triable fact when . . . there have been substantial alterations in the

employee's responsibilities and supervision in the intervening period." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 328-29 (7th Cir. 2002) (quoting Fortier, 161 F.3d at 1113 (emphasis added)).

Diab readily admits that he was frequently tardy to work, and that he called in sick several times. Even after Diab was told my Maraviles that his behavior was intolerable he continued to arrive late to work. Diab alleges that he was arriving late to work because he was denied "flex-time." As Diab correctly points out, he was denied "flex-time" which meant that his shift, the shift that he requested, started at 8:00 a.m.. IDHS requires its employees to arrive on time for work, this is a legitimate employment expectation, which Diab repeatedly failed to meet. Furthermore, IDHS has certain rules and regulations regarding the treatment of their patients. Diab was found to have violated those rules and regulation when dealing with patient R.C. on May 1, 1997. Another example of how Diab was not meeting IDHS' legitimate employment expectations, the second element of the the prima facie case.

Diab also fails to present evidence to substantiate the final element of a prima facie case, that a similarly situated employee was treated more favorably. To meet his burden of demonstrating that another employee is "similarly situated," Diab must show that there is someone who is directly comparable to him in all material respects. Greer, 267 F.3d at 728; Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000); Spath v. Hayes Wheel's Int'l-Ind., Inc., 211 F.3d 392, 396 (7th Cir. 2000). "[A] court must look at all relevant factors, the number of which depends on the context of the case." Radue, 219 F.3d at 617. Such factors include whether the employees "dealt with the same supervisor" and were "subject to the same standards." Id., 219 F.3d at 617-618.

Diab attempts to show that there were other similarly situated individuals who were allowed to work "flex-time." Specifically, Diab points to Agnes Hayes as an individual who was allowed

8

to work "flex-time." However, Hayes worked in a different area and under a different supervisor than Diab. Therefore, Diab's attempt to depict Hayes as a similar situated individual fails.

In short, Diab cannot demonstrate the necessary elements needed to establish a prima facie case. This would normally end the inquiry of the court, but with an abundance of caution the court will assume that Diab established a prima facie case and analyze whether IDHS's reasons for terminating Diab are pre-textual.

Diab fails to demonstrate that the reasons stated by IDHS for there employment actions were pre-textual. IDHS states that they suspended Diab for his repeated tardiness and for the threatening statements he made toward Maraviles. IDHS also states that Diab was later terminated because of his involvement in an incident that lead to the injury of a patient.

Diab argues that the adverse employment actions were not related to his work, but rather to his national origin. Diab asserts that Maraviles made several derogatory statements to him regarding his ethnicity and place of birth. Diab has not provided any evidence to support his allegations, merely his own self-serving statements. Furthermore, Diab admits to being frequently tardy and was present during the altercation with the patient on May 1, 1997. The fact that an ALJ later determined that Diab should not have been terminated does not make their reason pre-textual. "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." Hicks, 509 U.S. at 515 (1993). Diab has presented no evidence that the stated reasons for IDHS' employment actions were either false or that discrimination was the real reason.

IDHS's motion for summary judgment is meritorious. Diab has been unable to demonstrate the necessary elements needed to establish a prima facie case of national origin discrimination or that

9

IDHS's reasons for there employment actions were pre-textual. Diab has failed to establish his national origin discrimination claims.

## III. CONCLUSION

Defendant's motion for summary judgment brought pursuant to Fed. R. Civ. P. 56 is granted.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, SR., District Judge

DATED: 2-3-03